Shauck, J.
The only question for consideration arises out of the allegations of the petition that the central committee of Montgomery county did not *26 select an executive committee, but itself continued to exercise all the functions of an executive committee including the recommendation of the relator. The view urged in support of the demurrer is that the law does not require the chief supervisor and inspector of elections to regard a recommendation of this character unless it is made by an executive committee chosen by a central committee* The case arose under a statute providing that the central committee may appoint an executive committee and before a recent amendment providing that it shall make such an appointment. The pertinent provisions are that the chief supervisor shall appoint as the representatives of a party entitled to representation on the board of deputy supervisors qualified persons who may be recommended by the executive committee of that party, and that the central committee of a political party may select an executive committee. The claim that a recommendation made by the principal committee instead of by a subordinate committee, which it may or may not appoint, clearly sacrifices the substance and spirit of the scheme of legislation upon this subject to its form. It imputes to the legislature the assumption that the central committee might confer upon its creature powers which it did not itself possess — that the creature is greater than its creator.
The provisions affecting the question were embraced in the act of 1892, which created the office which the defendant now holds, and they have been in force for more than twenty years receiving in many counties of the state the interpretation of obvious propriety that if the central committee did not choose to exercise the privilege given it to ap *27 point an executive committee, it would retain and might exercise all the functions of party representation, including authority to recommend its representative in the board of deputy supervisors of elections. Not only did this settled interpretation of the statute result from a rational view of its provisions and of its evident purpose, but it was encouraged by official information and instruction issued from the office of the defendant for the guidance of the public and subordinate election officers. Such information was issued by the defendant himself in 1911', following, as he says, the custom of his predecessors. Speaking of this particular function of a committee he says: “Where a county ■ central committee exercises full control and management of the political affairs of the county and has not conferred such authority upon an executive committee, then the central committee would be authorized to make such recommendation. But if the central committee has duly appointed an executive committee with power to act in the management and control of the political affairs of the county until the creation of a new committee, such executive committee would have authority to make such recommendation.” That this instruction was imparted by the predecessors of the defendant whom he followed in the view which it expresses does not detract from, but adds to, its significance. As he can have no interest adverse to the performance of his duties to the public, the instruction is not offered as an estoppel, but to show the uniform and established interpretation from which it is now, for the first time, proposed to depart. Certainly this cortical interpretation should not be adopted for the *28 purpose of annulling acts already taken in obedience to a substantial view of the law followed without question for more than twenty years.

Demurrer overruled and peremptory writ allowed.

Nichols, C. J., Johnson, Wanamaker and Newman, JJ., concur.